SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–656

| | |
|---|---|
| KATHERINE VELASCO<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** DECEMBER 16, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH JUVENILE DIVISION [NO. 60JV–14–1186]<br><br>HONORABLE WILEY A. BRANTON, JR., JUDGE<br><br>AFFIRMED |

### DAVID M. GLOVER, Judge

Katherine Velasco's parental rights to her four children, A.B. (dob 11/14/04), A.V. (dob 2/1/06), M.M.V. (dob 8/24/07), and M.A.V. (dob 12/27/11), were terminated by the Pulaski County Circuit Court.[1] Ms. Velasco now appeals the termination. We affirm the trial court's decision.

On August 22, 2014, the Arkansas Department of Human Services (DHS) exercised a seventy-two-hour hold on the children after the Pulaski County Narcotics Unit executed a search warrant on the Velasco home based on information that the Velascos were selling drugs there with the children present. The search yielded a meth pipe, a marijuana pipe, and marijuana in the children's room, as well as two pounds of marijuana, two ounces of meth, firearms, and other drug paraphernalia in other areas of the house. Both of the Velascos were

---

[1]The parental rights of Adrian Masestas, putative father of A.B., and Miguel Velasco, legal father of A.V., M.M.V., and M.A.V., were also terminated; however, neither of these men is a party to this appeal.

arrested and charged with child endangerment and various drug charges. Ms. Velasco initially denied any knowledge of her husband selling drugs from her home, but she later admitted he had been selling drugs. DHS filed a petition for ex parte emergency custody and dependency-neglect on August 25, 2014, based on these events, and an ex parte order for emergency custody was entered that same day. On September 23, 2014, a probable-cause order continuing custody of the children with DHS was entered.

On November 6, 2014, an order adjudicating the children dependent-neglected was entered. In this order, the trial court found that two of the children had tested positive for THC, as had Ms. Velasco. Furthermore, the trial court found by clear and convincing evidence that the Velascos had subjected the children to aggravated circumstances in that the children were neglected such that the neglect could endanger their lives, and there was little likelihood that services to the family would result in successful reunification. In making the aggravated-circumstances finding, the trial court specifically relied on the August 22 drug raid, at which the children were present; the fact that drugs, drug paraphernalia, and a firearm were found within easy reach of the children during the raid; the positive drug-test results; evidence of marijuana next to a birthday cake, a dead rat on the kitchen counter, and an infestation of roaches in the home; the fact that Ms. Velasco admitted Mr. Velasco had been selling drugs from the house; and the pending criminal charges against both parents. The trial court noted in its order that Ms. Velasco testified she and Mr. Velasco had separated. Ms. Velasco did not appeal the adjudication order.

On February 5, 2015, a review order was filed. In this order, the trial court changed

the goal of the case to termination of parental rights, finding that shortly after the last hearing, Mr. Velasco had moved back into the house, and a second drug raid had been conducted there, resulting in further criminal charges. The trial court rejected Ms. Velasco's claim that she did not know drugs were again being sold out of the house, and it made a second finding of aggravated circumstances, again finding that it was unlikely that services to the family would result in successful reunification.

DHS filed a petition to terminate parental rights on February 26, 2015. After a hearing, the trial court terminated Ms. Velasco's parental rights in an order entered on May 28, 2015.

The appellate courts review termination orders de novo. *Singleton v. Arkansas Dep't of Human Servs.*, 2015 Ark. App. 455, 468 S.W.3d 809. An order terminating parental rights must be based on clear and convincing evidence. *Camarillo-Cox v. Arkansas Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). The trial court's findings will not be reversed unless they are clearly erroneous—when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Strickland v. Arkansas Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008). Credibility determinations are left to the fact-finder. *Singleton*, *supra.*

In order to terminate parental rights, the trial court must determine by clear and convincing evidence that such termination is in the child's best interest, including consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2015). One of the statutory grounds for termination in Arkansas Code Annotated

section 9-27-341(b)(3)(B) must also be proved by clear and convincing evidence.

Ms. Velasco does not challenge the statutory grounds for termination,[2] nor does she challenge the trial court's finding that her children are adoptable. She does, however, take issue with the second prong of the best-interest analysis—the trial court's finding that the children would be subject to potential harm if returned to her custody.

In considering potential harm caused by returning the child to the parent, the trial court is not required to find that actual harm would result or affirmatively identify a potential harm. *Welch v. Arkansas Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability the child receives in a permanent home. *Collins v. Arkansas Dep't of Human Servs.*, 2013 Ark. App. 90.

On appeal, Ms. Velasco argues that her children would not be subjected to potential harm if returned to her custody. In support of this assertion, Ms. Velasco points to the testimony at the termination hearing that she has been in a faith-based substance-abuse program and is doing well in the program; she has had negative drug screens; she has made

---

[2] One of the grounds for termination alleged by DHS in its petition for termination of parental rights was Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(*a*)(*3*), that the children had been subjected to aggravated circumstances. A finding of aggravated circumstances was made in this case at the adjudication hearing. In termination cases, a challenge to a finding of aggravated circumstances must be made, if at all, in an appeal from the adjudication order, and if one fails to appeal from an adjudication order in which an aggravated-circumstances finding is made, one is precluded from asserting error with respect to that finding on appeal from an order terminating parental rights. *Holloway v. Arkansas Dep't of Human Servs.*, 2015 Ark. App. 458, 468 S.W.3d 805. Velasco acknowledges that she did not appeal the adjudication order in which the finding of aggravated circumstances was made and therefore cannot now attack that ground for termination on appeal.

all of her visits with her children; that although a home study had not been performed, the caseworker admitted the home appeared to be stable; and, while Ms. Velasco had not provided verification of her employment, she had testified she had been employed since October 2014. Ms. Velasco also asserted she had reached a plea deal on her criminal charges that would place her on one year of probation without any jail time.

While it is true there was testimony that Ms. Velasco had shown progress with regard to getting her life back on track, the fact remains that drug raids were made on the Velasco home, not once, but twice. While the children were not present in the home for the second drug raid, the fact that drugs continued to be sold out of the house after the children had been removed due to the first drug raid is an indication of where the parents' priorities lie. While Ms. Velasco argues it was her husband, not her, who was selling drugs, the trial court did not find her statements that she was unaware that drugs were being sold out of her house to be credible, especially in light of her past statements in which she admitted she knew drugs were being sold. Furthermore, Ms. Velasco testified at the termination hearing she loved Mr. Velasco and was still in a relationship with him, while at the same time asserting that she would not allow him to come back into the home until he obtained help with his substance-abuse issues. The trial court found Ms. Velasco was not credible, and it was concerned that if the Velascos stayed together, there would be future drug activity around the children.

We cannot say that the trial court's findings with regard to potential harm were clearly erroneous. While Ms. Velasco has indeed made strides in improving her life, the trial court did not find her to be a credible witness. There had been not one, but two, drug raids in the

home, and the trial court believed Ms. Velasco was aware of the drug activity in her home. Furthermore, Ms. Velasco professed she still loved Mr. Velasco, and they were still together at the termination hearing. A parent's past behavior is often a good indicator of future behavior. *Singleton*, *supra*. While Ms. Velasco may not have been the one selling the drugs, she was aware it was occurring and had not demonstrated that she was willing to put the well being of her children above her relationship with Mr. Velasco and his criminal activity.

Affirmed.

GLADWIN, C.J., and VAUGHT, J., agree.

*Dusti Standridge*, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.