2012 Ark. App. 203

**Jasmine COLE, Appellant**

v.

**ARKANSAS DEPT. OF HUMAN SERVICES and Minor Child, Appellees.**

**No. CA 11–1178.**

Court of Appeals of Arkansas.

March 14, 2012.

Deborah Ruth Sallings, Little Rock, for appellant.

Tabitha Baertels McNulty, Little Rock, and Melissa Bristow Richardson, Jonesboro, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Jasmine Cole appeals from the September 7, 2011 order of the Washington County Circuit Court terminating her parental rights to her son, JE, born September 16, 2008. On appeal she claims that the trial court's termination order was not supported by clear and convincing evidence and should be reversed. We disagree and affirm.

The Arkansas Department of Human Services became involved in this case in late July 2010, based on allegations of physical abuse. The abuse was first noticed by JE's babysitter, who observed severe bruising on the child's body and feared that the child had been a victim of physical abuse. She reported the abuse to an officer stationed at her apartment complex, who notified appellee DHS.

In response to the babysitter's inquiries as to how JE sustained the injuries, Cole reported that her boyfriend, Otis Wayne Lynch, became angry because the child (who was twenty-two months old) urinated on the floor, and Lynch hit the child with a belt. On July 29, 2010, DHS obtained emergency custody of the child, and the child was removed from Cole's custody by DHS. The toddler's injuries included a "busted blood vessel to the left eye, bruising to his temples and right eye, scratches and bruises to the arm and stomach, old and new bruises to the back, and severe bruising to the back of both legs." According to the emergency petition, when confronted, Lynch admitted to beating the child and was arrested for second-degree battery. Cole was also charged with felony permitting abuse of her child.[1]

In an order entered on September 29, 2010, the court adjudicated the child dependent neglected based on abuse, neglect, and Cole's parental unfitness, which was predicated on her unwillingness to accept responsibility for the harm that JE suffered. The court noted testimony from the investigating police officer who stated that when he asked Cole how she had not noticed these severe injuries to her child, she responded that she "dressed him in the dark" and that her boyfriend "may have spanked" the child. The trial court specifically found the police officer's testimony that the child sustained his injuries at the hands of his mother's boyfriend to be credible. The trial court also noted that Cole continued to make excuses for the child's injuries, stating that the child was clumsy and that she did not know how the child sustained his injuries, while claiming that there was nothing that could be done to prevent Lynch from injuring the child because he "just gets out of control."

The trial court concluded by clear and convincing evidence that [Cole's] boyfriend Otis (aka "Wayne") beat and abused [JE] and caused non-accidental injuries, intentional injuries—Mother knew about her boyfriend beating her child and did nothing to stop it and continued to allow the child to be left with Mom's abusive boyfriend. Mother exposed child to aggravated circumstances, by failing to protect. The adjudication of JE as dependent neglected was not appealed.

On January 26, 2011, the trial court placed JE in the custody of his maternal great-grandmother, Velda Tyson. At the time of the placement, Cole had "partially" complied with her case plan; however, she had failed to provide proof of employment, had not participated in individual counsel-

---

1. As a result of Cole agreeing to a plea, the charge was dropped to misdemeanor endangering the welfare of a minor.

ing, and had not resolved her pending criminal charges.

At the permanency-planning hearing on May 25, 2011, the case goal was changed from reunification to adoption. The court found that JE "would be in grave danger if placed with [Cole] today." The court also found that Cole "seems so angry and needs individual counseling" but due to her own actions had not taken advantage of the free counseling the court ordered in September 2010. The court also found that Cole continued to fail to comprehend how she "failed her child, allowed him to be abused by her boyfriend, and she still fails to make [JE] a priority." The court also found that Cole

> has not complied with all the court orders and the case plan. Specifically, [Cole] is unfit; she has not been in individual counseling; she has only seen [JE] [three] times since January 29, 2011; she has been [in] jail on her criminal charges since our last hearing; [Cole] has only been employed since March and only had her own apartment since April. She is not maintaining sustainable, measurable progress in this case; she has never been in 100% compliance.

The permanency-planning order (and the findings contained in that order) were not appealed. The termination hearing took place on August 31, 2011, and was predicated on the fact that the child had been out of his mother's care for more than twelve months and the mother failed to correct the conditions that caused removal of the child. The court also found that termination of parental rights was in the child's best interest. It is from this order that Cole currently appeals.

For reversal, Cole contends that the evidence was insufficient to support the trial court's findings that she had not made sufficient progress in improving the condi-

tions that caused removal of the child and a meaningful effort to rehabilitate the home and correct the conditions that caused removal. Cole also argues that there is no evidence to support the trial court's conclusion that the termination of parental rights was in the best interest of the child.

■ We review termination of parental rights cases de novo. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 344, 285 S.W.3d 277, 281–82 (2008). The grounds for termination of parental rights must be proved by clear and convincing evidence. *Id.*, 285 S.W.3d at 281. When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.*, 285 S.W.3d at 281–82. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, 285 S.W.3d at 282.

The trial court based the termination of appellant's parental rights on Ark.Code Ann. § 9–27–341 (Supp.2011), which provides, in pertinent part, that

> (b)(1)(A) the circuit court may consider a petition to terminate parental rights if the court finds that there is an appropriate permanency placement plan for the juvenile.

> (3) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:

>> (A)That it is in the best interest of the juvenile, including consideration of the following factors:

(i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

(ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents; and

(B) Of one (1) or more of the following grounds:

(i) (*a*) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months, and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied y the parent.

The main focus of Cole's argument on appeal is that she was due more time to continue working on the case plan and to demonstrate compliance. She argues that there should have been no rush to terminate her parental rights because JE was being cared for by a loving, competent family member, and he was thriving. Cole also argues that despite the trial court's conclusion otherwise, she had continued to make excellent progress in complying with her case plan. She notes that she did begin individual therapy the month before the termination hearing.

Also, Cole explains that her limited visitation with JE was a result of geography, not lack of interest. She points the court's attention to the fact that she lives in east Arkansas and the child lives with his grandmother in northwest Arkansas. She claims that she cannot live near her child because she is attending school (and making satisfactory progress) at a community college in east Arkansas and is gainfully employed in Forrest City. However, she offers no explanation as to why she cannot attend school and work in closer proximity to her child. But otherwise, there is no question that she was making adequate progress in many areas of the case plan.

There is but one failure that belies her claim that the termination was premature and not in the child's best interest, and goes to the underlying reason that her son was originally removed from her care—the fact that the child had been severely beaten at the hands of Cole's boyfriend. The record in this case shows that Cole has consistently refused to accept any responsibility or recognize the problem with placing JE in such a position (despite having served time for the underlying crime of failing to protect the child). Velda Tyson testified that Cole

> has [had] a mean attitude throughout the case, [and is] angry toward me too. We get into it at least twice a week on the phone. When we talk she doesn't take any responsibility for the fact that her actions caused this. It's everybody else's fault.

Further, Tyson testified that Cole brings other people (including unknown men) with her when she visits the child. And, according to Tyson's testimony, Cole still does not accept responsibility for the physical abuse that JE suffered at the hands of Lynch. Tyson stated that when she explains to Cole that JE is under DHS protection because Cole's "boyfriend beat the tar out of [JE]," Cole responds, "I don't know that. Daycare did it." Tyson testified, "She's still saying that daycare did it."

The trial court made the following findings based on the testimony 1) Cole did not make an effort to see her child as often as Tyson would permit; 2) Cole brought other men with her to the few visits she made; 3) Cole still claims that the daycare center is responsible for abusing JE; and

4) Cole's own grandmother (and the child's guardian) observed that the "whole thing" has not "sunk into [Cole's] head" and this makes for a harmful situation for ⌊₇JE. The court also noted testimony from Tyson that she would be willing to permanently care for the child.

■ The best-interest standard requires a consideration of the child's likelihood of adoption and the potential harm from returning the child to the parent's custody. Ark.Code Ann. § 9–27–341(b)(3). Additionally, the trial court is only required to find that there is a risk of harm; it is not required that a specific harm be identified. *In re Adoption of K.M.C.*, 62 Ark.App. 95, 969 S.W.2d 197 (1998). Our supreme court has charged that the "harm analysis" should be conducted in broad terms. *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001).

■ Here, the trial court had sufficient evidence to support an order terminating Cole's parental rights and a conclusion that the termination was in the child's best interest. First, the child had been out of Cole's home for over twelve months and there was evidence that he was adoptable. Second, Cole failed to comply with the case plan in its minute detail (e.g. counseling, visitation) but also in the most fundamental of ways—most alarmingly, Cole's inability to recognize and accept the facts of the circumstances surrounding the severe abuse JE suffered and the role she played in that abuse. This failure alone supports a finding that returning the child to Cole presents a substantial risk of serious harm and is therefore not in the child's best interest.

■ We have previously held that even full completion of a case plan is not determinative of the outcome of a petition to terminate parental rights. *Wright v. Ark. Dep't of Human Servs.*, 83 Ark.App. 1, 115 S.W.3d 332 (2003). What matters is whether completion of the case plan achieved the intended result of making the parent capable of caring for the child—mere ⌊₈compliance with the directives of the court and DHS is not sufficient if the root cause of the problem is not dealt with. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 345–46, 285 S.W.3d 277, 282–83 (2008).

Based on the fact that JE had remained in limbo for over one year, and Cole had yet to accept any meaningful responsibility for the abuse that JE was forced to suffer, the trial court did not err in its failure to allow Cole more time to progress. She had shown no progress in the single most crucial component of the case, demonstrating that she could protect and care for her son. As such, we see no clear error in the trial court's order and affirm the termination of Cole's parental rights.

Affirmed.

HART and ROBBINS, JJ., agree.