
# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-15-251

| | |
|---|---|
| KRISTINA SINGLETON<br><br>APPELLANT<br><br>V.<br><br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES, H.M., M.M., AND D.A., MINORS<br><br>APPELLEES | **Opinion Delivered** September 9, 2015<br><br>APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT [NO. JV-2013-21]<br><br>HONORABLE TERRY SULLIVAN, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Appellant, Kristina Singleton, appeals from an order of the Scott County Circuit Court terminating her parental rights to her children: D.A., born June 19, 2008; H.M., born May 13, 2007; and M.M., born December 28, 2004. She contends on appeal that the evidence was insufficient to support the circuit court's decision that termination was in the children's best interest. We find no error and affirm the circuit court's order.

Appellant had a history with the Arkansas Department of Human Services (DHS), having been a foster child due to sexual abuse by her father, Robert Ford. In addition, there were two true findings for medical neglect of her son, D.A., who suffers from severe to profound hearing loss. This current case began on April 23, 2013, when DHS received two investigation reports on the family: sexual abuse of H.M. by her grandfather, Robert Ford, and failure to protect by appellant. Appellant had left her children with her parents while she was out of town, which is when the abuse occurred. Although appellant and her sister had

both been sexually abused by Mr. Ford, appellant thought it was "okay" to leave her children in his home because he had "taken parenting classes in the past." She and the children had been living with her parents for several weeks before the abuse occurred. In its affidavit supporting a change of custody, DHS also mentioned the previous two true findings for medical neglect regarding D.A.

In its probable-cause order filed June 3, 2013, the court expressed concern about appellant's stability, employment, and boyfriend. Early in the case, appellant lost her job and was dependent on her boyfriend, James Dean, who was incarcerated for domestic battery against appellant. According to DHS's court report, appellant had a history of domestic violence in relationships. In a review order entered six months later, the court ordered appellant to secure employment and work on her sign language to communicate with D.A. The court again ordered appellant to make progress on learning sign language in a review order dated May 13, 2014. The court also ordered her to participate in therapy with D.A., obtain and maintain employment, and obtain a driver's license. Finally, on September 5, 2014, the court entered a permanency-planning order, finding that appellant had failed to comply with the case plan by not having a driver's license, and thus having no licensed and insured transportation; acquiring minimal sign-language skills, thereby seriously impairing her ability to communicate with D.A.; not attending counseling on a regular basis; and infrequently visiting the children. The court changed the goal to termination of parental rights and adoption.

During the case, H.M. spent two months in a children's shelter and then was placed

with a family where she did well. D.A. was initially placed with a different family but later moved to the Arkansas School for the Deaf during the school-year weekdays, where he "exploded" in language according to his therapist at the school. He spent his weekends and summer with the same foster family that was caring for H.M. D.A. did very well in these environments. M.M.'s placements were not as stable, however, due to behavior problems, and he was moved several times during the case. M.M. was finally placed with a family in August 2014, which has been successful.

At the termination hearing, appellant testified that she and her abusive boyfriend, James Dean, were still "friends" and that he had come by on the morning of the termination hearing to see her. She admitted that she did not have a driver's license, that she did not have a job, and that she was not certain how she would pay her rent for the next month. She insisted she would find a job before the rent was due. She also testified that she had a basic knowledge of sign language and that, when she did not understand D.A., she would ask his foster mother to explain.

A DHS program assistant who attended appellant's visitations with the children testified that appellant had not improved in her ability to communicate with D.A. since the beginning of the case but that D.A.'s siblings had improved and communicated well in sign language with him. Appellant's counselor testified that she had provided counseling to appellant three times in late 2013 but that appellant did not attend any more sessions after that time. She testified that she was unable to reach appellant at the phone numbers provided to determine why appellant failed to continue therapy. Appellant's DHS caseworker, Arial

Vaught, testified that the children were adoptable and that she knew people who were interested in adopting them. The attorney ad litem opined that it would be in the best interest of the children for appellant's rights to be terminated.

At the hearing, the circuit court expressed its concern that appellant had made very little progress learning sign language to communicate with D.A.; that she had no job or transportation; and that she continued to have issues with her choice of men. In a termination order entered January 9, 2015, the court found by clear and convincing evidence that it was in the best interest of the children for appellant's rights to be terminated. The court specifically stated that it considered the likelihood that the children would be adopted and potential harm and that it found the testimony of Ms. Vaught credible. The court found that appellant had made little or no progress learning sign language to effectively communicate with D.A., that she was unemployed and unable to provide the court with any reasonable prospects of employment, that she did not have reliable transportation or a driver's license, and that she had been inconsistent in attending therapy.

We review termination–of–parental–rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 213, 40 S.W.3d 286, 291 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2013). In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. *Smith v. Ark. Dep't of Human Servs.*,

2013 Ark. App. 430, at 4, 431 S.W.3d 364, 367. Adoptability is not an essential element but is rather a factor that the trial court must consider. *Id*. Likewise, the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Sarut v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 76, at 7, 455 S.W.3d 341, 346. The potential-harm analysis is to be conducted in broad terms. *Id*. It is the "best interest" finding that must be supported by clear and convincing evidence. *Id*. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 248, 947 S.W.2d 761, 763 (1997). Credibility determinations are left to the fact-finder. *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, at 6, 434 S.W.3d 371, 375.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3) (Supp. 2013). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Ford v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 226, at 3, 434 S.W.3d 378, 381. Finally, a parent's past behavior is often a good indicator of future behavior. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, at 8, 427 S.W.3d 160, 164.

SLIP OPINION

Appellant argues that most of the evidence at the hearing focused on D.A. and that, at a minimum, custody of M.M. and H.H. should be returned to her. She also blamed DHS for failing to offer her sign-language classes and argued that learning any new language is difficult and would take an extensive investment of time. Finally, she argues that there was insufficient evidence of specific individuals interested in adopting the children.

Although much of the testimony at the termination hearing concerned D.A.'s progress and appellant's apparent inability to communicate with him or improve her sign-language skills, the court also expressed grave concern about appellant's instability, unsafe male relationships, lack of transportation, and lack of employment, all of which address the potential-harm consideration. Moreover, the court specifically found at the hearing that the children were adoptable. There is no requirement that DHS provide the names of specific adoptive parents for the children or even provide evidence that it has identified such persons at the termination hearing. The statute does not require any magic words but merely provides that the court consider the likelihood that the children will be adopted in making its best-interest determination. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, at 7, 431 S.W.3d 364, 369; Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2013). Adoptability is not an essential element of proof. In this case, there was testimony that the children were adoptable, and there is no question that the court considered adoptability. The court specifically found by clear and convincing evidence at the conclusion of the hearing that the children were adoptable. We cannot say that the circuit court's finding that it was in the children's best interest to terminate appellant's parental rights was clearly erroneous.

Affirmed.

ABRAMSON and HOOFMAN, JJ., agree.

*Travis Ragland*, for appellant.

*Tabitha Baertels. McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.