# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-841

SHANNON TAYLOR

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR
CHILDREN

APPELLEES

**Opinion Delivered** February 1, 2017

APPEAL FROM THE FRANKLIN
COUNTY CIRCUIT COURT,
NORTHERN DISTRICT
[NO. 24JV-15-4]

HONORABLE KEN D. COKER, JR.,
JUDGE

AFFIRMED

---

### N. MARK KLAPPENBACH, Judge

Appellant Shannon Taylor appeals the June 27, 2016 order of the Franklin County Circuit Court that terminated her parental rights to her daughter CT (born in January 1999) and her son AT (born in October 2005).[1] Appellant argues on appeal that the trial court's finding, that it was in her children's best interest to terminate her parental rights, is not supported by clear and convincing evidence. Thus, appellant argues, the trial court's termination order must be reversed. We hold that the trial court did not clearly err, and we affirm.

We review termination–of–parental–rights cases de novo. *Mitchell v. Ark. Dep't of*

---

[1]The children's biological father, Harold Taylor, voluntarily surrendered his parental rights in May 2016, and he is not a party to this appeal. The children's older sister, born in 1997, is not part of this case because she reached the age of majority.

*Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9–27–341 (Repl. 2015); *Dunn v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 34, 480 S.W.3d 186. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006). Credibility determinations are left to the fact-finder. *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, 434 S.W.3d 371.

The best-interest finding must be based on a consideration of two factors: (1) the likelihood that, if parental rights are terminated, the juvenile will be adopted and (2) the potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Adoptability is not an essential element but is rather a factor that the trial court must consider. *Singleton v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 455, 468 S.W.3d 809. A trial court is not required to find that actual harm would result or to affirmatively identify a potential harm. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App.

323, 210 S.W.3d 143 (2005). Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability of a permanent home. *Vail v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 150, 486 S.W.3d 229; *Caldwell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 144, 484 S.W.3d 719. It is the "best interest" finding that must be supported by clear and convincing evidence after consideration of the foregoing factors. *Id.*

The intent behind the termination–of–parental–rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9–27–341(a)(3). Even a parent's full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Ford v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 226, at 3, 434 S.W.3d 378, 381. Finally, a parent's past behavior is often a good indicator of future behavior. *Singleton*, *supra*; *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, 427 S.W.3d 160.

With these parameters of law, we examine the evidence presented to the trial court in this case. The Arkansas Department of Human Services (DHS) exercised an emergency hold on appellant's children, CT and AT, in January 2015, following allegations that appellant's husband, Harold Taylor, sexually abused CT and that the children's older brother, Austin

Taylor, was abusive toward AT.[2] Subsequent to the entry of an ex parte order for emergency custody, the trial court found that probable cause supported the removal of CT and AT from appellant's custody. In March 2015, the trial court entered an order adjudicating these children dependent-neglected based on the sexual abuse inflicted by appellant's husband and appellant's failure to protect the children.

Over the remainder of 2015, there were multiple review hearings conducted that indicated appellant's intermittent compliance and noncompliance with the case plan. The primary issues with regard to appellant were her failure to protect her children, her consistent defense of her husband and disbelief that he had caused the children any harm, her lack of stable housing or employment, and her failure to complete individual counseling or to progress to family counseling.

A permanency-planning hearing was conducted in January 2016, and it was determined that appellant had regressed. She had no housing of her own, no job, and no transportation of her own; she failed to appear after two counseling referrals had been made; she had not taken any action to finalize the divorce proceedings that had been initiated in January 2015; she was "conflicted" and "on the fence" about whether the sexual-abuse allegations were true; she had told a potential witness in her husband's criminal case that the witness did not need to appear in court; she still felt that her husband was a good spouse,

_____

[2]Appellant's older daughter was also alleged to have been sexually abused by appellant's husband, but she was voluntarily removed from this DHS case when she reached the age of majority.

provider, and father to the children; and she had permitted AT to see his older brother Austin around New Year's Day although there was a no-contact order in place. Harold Taylor had by this time pleaded guilty to sexually abusing CT and was in prison.[3] The trial court found appellant to have not made any significant, measurable progress after a year had passed, that she had chosen her husband over her children, and that she had not demonstrated that she would protect CT and AT from harm. The trial court noted her lack of stable housing, employment, and transportation throughout this case. The trial court changed the goal of the case to adoption, authorizing DHS to file a petition to terminate parental rights.

DHS filed its petition in March 2016, alleging as statutory grounds that the children had been out of their mother's custody for a year and that she had not remedied the causes of removal; that subsequent issues or factors had arisen since the case had begun demonstrating that the children could not be placed with their mother; and that appellant had subjected her children to aggravated circumstances in that there was little likelihood that the provision of additional services would result in a successful reunification. DHS further alleged that it was in the children's best interest that termination of parental rights take place.

The termination hearing was conducted in May 2016. Appellant testified that she was presently living in Oklahoma with two friends (Barbara and James, whose last names she did not know) and their three children; she had lived there about a month but was "working on

---

[3]He entered a guilty plea to sexual assault in November 2015, accepting a one-year prison sentence.

trying to get out of there." Appellant said that Barbara had an open DHS case, but she did not know why. Appellant had been working at a new job for about a month. She admittedly moved a lot, basically every two to three months, the longest time in one place having been with her father for maybe five months. She admitted that the longest time she had held a job was for three months. Appellant knew that she was supposed to continue individual therapy, but she moved and had no transportation to get there. She had failed to ever attend family therapy, and she had missed the last three visits with her children. She agreed that at age forty, she had not been able "to get a place or a job or a car." She claimed that DHS did not assist her to acquire housing except for a referral or two and had failed to provide her with transportation as needed.

Appellant claimed that she was finally convinced that Harold had committed sexual abuse although she did not want to believe it. She admitted, though, that she had not told the judge or her attorney in the divorce case that there was an open DHS case; instead, she had agreed to joint custody with Harold, a decision she regretted. She claimed that she could now be trusted to protect the children and that she would like to have counseling restarted. She testified that "I will seriously do everything I can to keep them safe. And if I had a vehicle, I would go anywhere and do anything." Appellant asked for another three or four months to get prepared to have CT and AT back in her custody.

The DHS caseworker, Carla Lilley, testified that AT and CT were together in a foster-care placement, were making progress in therapy, and were pretty happy. Lilley recounted

6

the initiation of this DHS case and noted that it had been open for fifteen months. Lilley stated that appellant had never had stable enough housing for trial placements of the children with her. Although Lilley agreed that appellant had made some progress in the case, it did not last.[4] She said that appellant inappropriately spoke with the children about the sexual-abuse allegations; that she was kicked out of her mother-in-law's home; and that appellant at one point was planning to hitchhike with the children. Lilley testified that DHS had offered transportation and that appellant used it for a lot of services. Lilley said that the primary concern with appellant was whether she could provide a safe, clean house and protect her children from predators. She believed that the lack of stable and safe housing, a lack of transportation, a lack of steady employment, and her wavering position on whether her husband had committed sexual abuse all created a potential for harm if the children were returned to her. Lilley testified that the children loved their mother but expressed feeling unsafe at the thought of being home with her. Lilley stated her belief that all children are adoptable.

A DHS adoption specialist, Rae Lyn Shook, testified that if the children were cleared for adoption by termination of parental rights, she would run data matches for this sibling group to find a placement where the children would be together. Shook testified, "I'm not aware of any barriers to their adoption. I believe these children are adoptable. . . . I run data

---

[4]Lilley listed some of the DHS services that were provided to appellant, which included parenting classes, a psychological evaluation, counseling, transportation, visitation, home visits, letter referrals for housing, and case management.

matches for sibling groups of these ages all the time and have many, many matches for sibling groups of these ages. . . . I know that they are 10 and 17. . . the older one has experienced sexual abuse by her father and they are in a shelter–or in a placement at New Beginnings and that they would like to be placed together." Shook had not met with CT or AT; rather, she relied on the information provided by DHS. Shook maintained, though, that at this stage she was able to use her experience and exercise her judgment on this matter.

Both the attorney ad litem and the DHS attorney argued that termination of parental rights was in the children's best interest. DHS's attorney recounted the history of this fifteen-month-long case, summarizing that appellant had not done anything to demonstrate that she could protect CT and AT and that appellant's last minute change of mind regarding her husband was unconvincing. Appellant's attorney argued against termination, discussing each of the statutory grounds, and also asked for an additional three months' time for appellant to become ready to regain custody.

The trial judge issued his ruling at the end of the hearing, recounting the instability and unsuitability of appellant's housing after nearly a year and a half had passed; her apparent concession that she could not at present take her children home; her "haphazard" employment history; her failure to complete the "critical service" of individual counseling; her persistent refusal to believe that her husband committed abuse; her noncredible profession that she now believed the sexual-abuse allegations to be true; her attempt to dissuade a witness to testify against her husband in the criminal case; her unwillingness to cut ties with her

husband; and her decision to move out of state. The trial judge stated that "[h]er actions are telling me something completely different from what she's telling me here on the stand here today and her testimony is just not credible when compared to her actions." The trial court found that DHS had proved by clear and convincing evidence that three statutory grounds existed, as well as that it was in the children's best interest that termination of parental rights take place. The trial court specifically recited that it had considered and found there to be "substantial" and "tremendous" potential harm that would be caused to the children if returned to appellant's custody based on all the foregoing evidence. Further, the trial court recited that it had considered the adoptability of the children, finding them adoptable with no barriers, primarily based on the testimony of the adoption specialist. A formal order was filed of record, and this timely appeal followed.

Appellant argues on appeal that the trial court's "best interest" finding is clearly erroneous. She argues that the evidence supporting the likelihood of adoption, the potential harm to the children in being returned to their mother, and the overall best interest of the children is legally insufficient and mandates reversal. The children's attorney ad litem and DHS disagree, arguing that the trial court's decision is amply supported and should be affirmed. After applying the appropriate standard of review to this case, we disagree with appellant's arguments and affirm the trial court.

The circuit court is not required to find by clear and convincing evidence that the children are adoptable but merely must consider the likelihood of adoption if parental rights

9

are terminated. *Miller v. Ark. Dep't of Humans Servs.*, 2016 Ark. App. 239, 492 S.W.3d 113. Appellant argues that the present situation shows no evidence of the likelihood that these particular children would be adopted. We disagree. This is not a case in which DHS's only evidence was from a single caseworker's stated belief that all children are adoptable, which is insufficient. *See Grant v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 636, 378 S.W.3d 227 (holding that a caseworker's testimony that "all children are adoptable" was insufficient evidence). This is not a case in which there was a complete lack of evidence regarding adoptability. *Compare Kerr v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 271, 493 S.W.3d 342 (reversing best-interest finding where the trial court found the children were adoptable and stated that it understood that the foster parents had expressed an interest in adopting the children, but there was no evidence introduced to support the finding, and the court made no finding that the absence of evidence of adoptability made no legal difference to the ultimate decision of what was in the children's best interest); *Brown v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 725, 478 S.W.3d 272 (reversing best interest finding where the trial court did not address the adoptability factor, there was no evidence presented at the hearing regarding child's adoptability, and the court made no finding that the absence of evidence of adoptability made no legal difference to the ultimate decision of what was in child's best interest).

In this case, the adoption specialist testified in detail that there were no barriers to adoption of these children, knowing CT's and AT's ages and that the teenage girl had

experienced sexual abuse by her father. The adoption specialist stated that she ran data matches for sibling groups with these ages "all the time and have many, many matches for sibling groups of these ages." The adoption specialist stated that she relied on her experience and her judgment. The court specifically found that the children were adoptable based on the adoption specialist's credible testimony and the history of the case. Thus, the trial court undoubtedly considered the likelihood that CT and AT would be adopted. We hold that the trial court's consideration of the likelihood that CT and AT would be adopted was underpinned by adequate evidence and supported the ultimate decision on the children's best interest. *See Ware v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 480, __ S.W.3d __; *Bell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 446, __ S.W.3d __.

Moving to the factor of "potential harm," we note that a parent has an affirmative duty to protect her children from harm. *Vasquez v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 575, 337 S.W.3d 552. In the present appeal, appellant argues that there was still reason to believe that a positive, nurturing parent-child relationship could exist, given that these children love their mother, and appellant was emphatic that she would work to protect them. Appellant asserts that the facts here showed that termination was not in these children's best interest. Appellant acknowledges, though, that living in a prolonged state of uncertainty or impermanence is harmful to a child. *See Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001). We disagree that appellant has demonstrated clear error in the trial court's findings.

11

In *Drake v. Arkansas Department of Human Services*, 2014 Ark. App. 475, 442 S.W.3d 5, this court affirmed the termination of one parent's parental rights and upheld the circuit court's potential-harm finding where that parent persistently denied the danger posed to the children by his spouse's mental-health issues. Likewise, in the instant case, appellant failed to recognize the necessity of ongoing therapy and counseling and refused to acknowledge that her husband and son were abusive and posed potential harm to the children. This manifests a long-term failure to protect, and the trial court found appellant's eleventh-hour claim that she would protect her children to lack credibility. The trial court noted the numerous ways in which appellant had failed to gain the stability that these children needed in that she lacked any stable appropriate housing, stable adequate income, or reliable transportation. The trial court gave due consideration to both the likelihood of adoption and the potential threat of harm to them if returned to their mother's care. *Cf. Fox v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. In sum, we hold that the trial court did not clearly err in finding that termination of parental rights was in CT and AT's best interest.

Affirmed.

HARRISON and WHITEAKER, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.