SLIP OPINION

Cite as 2015 Ark. App. 76

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-14-878

| | |
|---|---|
| REBECCA SARUT<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND A.B.1, A.B.2,<br>AND A.B.3, MINOR CHILDREN<br>APPELLEES | **Opinion Delivered** February 11, 2015<br><br>APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. JV 2013-123-3]<br><br>HONORABLE STACEY<br>ZIMMERMAN, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Judge**

Appellant, Rebecca Sarut, appeals from an order of the Washington County Circuit Court terminating her parental rights to her children: A.B.1, born April 21, 2008; A.B.2, born October 29, 2010; and A.B.3, born March 29, 2012. She contends on appeal that the evidence was insufficient to support the circuit court's decision, specifically the court's findings of grounds for termination and potential harm. We find no error and affirm the circuit court's order.

The events that led to the termination began in February 2013, when local law enforcement contacted the Arkansas Department of Human Services (DHS) for assistance with appellant's three children. Appellant and the children's father, Franklin Boyt, were living in a hotel room in Washington County with the children.[1] Mr. Boyt had been sent

---

[1]Mr. Boyt's parental rights were terminated in an order entered on May 5, 2014. He has not filed an appeal from that order. Mr. Boyt and appellant were still married at the time

to the hospital for an apparent drug overdose. Appellant appeared inebriated and was slurring her words and stumbling with A.B.3 in her arms. She tested positive for methamphetamine, opiates, and benzodiazepines and admitted to using methadone. The hotel room was filthy: dirty dishes with molded food, piles of dirty clothes on the floor, and piles of dirty clothes on the children's beds. The children were dirty and eating grapes covered in kool-aid powder when DHS arrived. Appellant also had a history with DHS—a true finding of newborn illegal-substance abuse—because she and A.B.2 tested positive for amphetamines at the time of A.B.2's birth in October 2010.

DHS assumed immediate emergency custody of the children, and the court adjudicated them dependent-neglected in an order entered March 18, 2013. The court also made a true finding against both parents for inadequate supervision and environmental neglect. The court ordered appellant to undergo a drug-and-alcohol assessment and follow the recommendations, submit to weekly random drug screens, complete parenting classes, obtain and maintain stable housing and employment, demonstrate the ability to protect the children and keep them safe from harm, and pay weekly child support in the amount of $30. The goal of the case was set as reunification.

In a review order five months later, the court found that appellant had completed many of the requirements but had missed her drug-and-alcohol assessment and had not rescheduled. The court also found that she had missed some random drug screens. Finally, the court ordered her to "we[a]n off methadone."

_____

of appellant's termination hearing but were no longer living together.

The court reviewed the case again in December 2013. In its order of December 20, 2013, the court found that appellant had not "we[a]ned down/off on her methadone" and was "still at Phase One after nearly 3 years of methadone treatment." The court found that she needed to complete inpatient treatment to address her addiction to opiates. The court also determined that she had failed to maintain stable housing and to complete a drug-and-alcohol assessment.

In a permanency-planning order entered February 5, 2014, the court established concurrent goals of reunification and adoption, found that DHS had made reasonable efforts to provide family services toward reunification, and stated that appellant had made "substantial progress." However, the court also found that appellant was still on methadone, had not completed inpatient treatment, and still had no stable housing. The court again ordered appellant to "get off methadone."

After a second permanency-planning hearing conducted three months later, the circuit court found that, despite services offered and opportunity given, appellant still was not prepared to care for her three children, finding that she "has not gotten off methadone, has not completed inpatient drug treatment, has not submitted to drug screens, has not maintained stable employment, [and has] not obtained drug/alcohol assessment." The court changed the goal to adoption, authorizing DHS to pursue termination of appellant's parental rights.

At the termination hearing, appellant's case worker Miranda Collins testified that the children had been in foster care for seventeen months, that appellant had been ordered for

the entire seventeen months to obtain a drug-and-alcohol assessment but had failed to obtain one, and that appellant resided with her mother, whose home had been found to be inappropriate for the children after a home study was conducted for placement. Ms. Collins testified that appellant was unable to enter residential substance-abuse treatment, which the court ordered in December 2013, because she became pregnant and no facility would accept her for treatment if she was taking methadone while pregnant. Ms. Collins testified that the children were placed together in foster care and were doing very well. All three were on track developmentally and had "come a long way since coming into care." She also testified that the children were highly adoptable and that the current foster home was a potential permanent placement for all three children. She opined that it was in the children's best interest to terminate appellant's parental rights, that appellant had not demonstrated the ability to parent and care for the children, and that DHS had not received the child support from appellant that the court ordered in March 2013.

Appellant testified that she had been living with her mother in a two-bedroom apartment, although recognizing that the home had been deemed inappropriate for her children, so that her mother could help while she was pregnant. She stated that she had been going to NA meetings but had no proof of that fact. She also testified that she had given birth the week before the hearing, that the child had been born positive for methadone, and that she had "signed over" her rights to the infant's father (not Mr. Boyt). She also admitted that she was not current on her child support, stating that she was "a little bit behind on paying." Regarding why she had failed to obtain a drug-and-alcohol assessment for almost a year and

a half, she said she missed her appointment because she had another appointment for something (she could not remember what) and that DHS had not given her a new referral. She testified that she was still taking methadone but that she was almost "completely done with it." Finally, she testified that she was still married to Mr. Boyt, that she had not seen him since he had been out of jail, that she hardly ever talked to him, and that he had come to the hearing with her sister and not with appellant.

The attorney ad litem recommended termination, arguing that the children needed permanency, that they had been out of appellant's care for a good portion of their lives, and that they had been thriving in their foster home. She was concerned with appellant's continued long-term addiction to methadone and her inability to wean herself off it.

In its oral pronouncement from the bench, the circuit court expressed concern about how appellant would be able to support her three children when she had been unable to pay court-ordered child support of only $30 per week. The court was very concerned that, after more than three years of treatment, appellant had been unable to wean off methadone. This, coupled with her failure to obtain a drug-and-alcohol assessment or complete inpatient treatment to address her addiction, convinced the court that appellant could not safely and properly parent her children. The court also recognized that appellant was still married to Mr. Boyt, who continued to have a relationship with her family. The court was concerned that continued contact with Mr. Boyt, whose parental rights had been terminated, would be harmful to the children.

In its order, the court found by clear and convincing evidence that termination was

in the children's best interest, including consideration of the likelihood of adoption and the potential harm to the children caused by continued contact with appellant. The court also found clear and convincing evidence of three grounds: (1) the children had been adjudicated dependent-neglected and out of the custody of appellant for twelve months, and despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied; (2) the children lived outside the home of the parent for a period of twelve months and the parent had willfully failed to provided significant material support, here court-ordered child support; and (3) other factors or issues arose subsequent to the filing of the original petition that demonstrate that return of the children to appellant's custody is contrary to their health, safety, or welfare and that, despite the offer of appropriate family services, appellant has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the circumstances that prevent return to her custody. Ark. Code Ann. § 9–27–341(b)(3)(B) (Supp. 2013).

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 213, 40 S.W.3d 286, 291 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9–27–341 (Supp. 2013). In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody is returned to a parent. *Ford v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 226, at 2, 434 S.W.3d 378, 380. Adoptability is not an essential element but

is rather a factor that the trial court must consider. *Id*. Likewise, the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, at 10, 379 S.W.3d 703, 709. The potential–harm analysis is to be conducted in broad terms. *Id*. It is the "best interest" finding that must be supported by clear and convincing evidence. *Id*. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 247, 947 S.W.2d 761, 763 (1997). Credibility determinations are left to the fact-finder, here the trial court. *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, at 8, 444 S.W.3d 366, 371.

The intent behind the termination–of–parental–rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3) (Supp. 2013). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Schaible*, 2014 Ark. App. 541, at 8, 444 S.W.3d at 371; *Ford*, 2014 Ark. App. 226, at 3. 434 S.W.3d at 381. Finally, a parent's past behavior is often a good indicator of future behavior. *Schaible*, 2014 Ark. App. 541, at 8, 444 S.W.3d at 371.

For her first point on appeal, appellant argues that the evidence was insufficient to support the court's findings on all three grounds for termination. With regard to the first

SLIP OPINION

ground, appellant argues that DHS failed to plead a factual basis to support this ground in its petition. As support for her argument, she cites case law explaining that termination will not be allowed solely on the basis of a ground not pleaded in the petition for termination. *See, e.g.*, *K.C. v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 353, 374 S.W.3d 884. That is not the situation here. All three grounds found by the court to support termination were specifically pleaded in the petition for termination. Appellant was on notice of all three grounds and had the opportunity in a hearing to be heard. In the alternative, she argues that she remedied the conditions that caused removal because, although still married to Mr. Boyt, she was no longer living with him; although she continued to use methadone, she had not tested positive for methamphetamine since the time of removal; and, although she missed her appointment for a drug-and-alcohol assessment, there had been no further discussion of an assessment until March 2014, when she was pregnant and was unable to obtain inpatient treatment. We turn to the evidence presented to support the court's finding. Appellant's children were taken into custody for inadequate supervision due to the parents' drug use and environmental neglect due to inappropriate housing. Appellant was, admittedly, still addicted to methadone at the hearing, had failed either to have a drug-and-alcohol assessment or to obtain inpatient drug treatment, and was admittedly living in a home that had previously been deemed inappropriate for her children. We hold that the court's finding of this ground is not clearly erroneous.

With regard to the failure-to-support ground, appellant contends that she testified that she was "a little behind" on paying child support but that she did have enough income to

support her children. She argues that there was clearly conflicting testimony regarding her child-support-payment history. Perhaps. But appellant's caseworker testified that appellant had not paid child support as ordered. Appellant testified that she was behind but offered no evidence of any payments. Credibility determinations are for the circuit court to make. *Schaible*, 2014 Ark. App. 541, at 8, 444 S.W.3d at 371. Again, we cannot say that the circuit court's finding is clearly erroneous. Further, because only one statutory ground is necessary to support termination, it is not necessary to address appellant's argument regarding the third ground.

For her second point on appeal, appellant argues that the record is "devoid" of any evidence of potential harm to the children if returned to her custody. The potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Schaible*, 2014 Ark. App. 541, at 9, 444 S.W.3d at 372. The potential-harm analysis is to be conducted in broad terms. *Id.* It is the "best interest" finding that must be supported by clear and convincing evidence. *Id.*

Here, the court was very concerned with appellant's inability and seeming indifference to overcoming her drug addiction. After more than three years of treatment, appellant had been unable to wean off methadone. This, coupled with her failure to obtain a drug-and-alcohol assessment and her failure to complete inpatient treatment to address her addiction, convinced the court that appellant could not safely and properly parent her children. The court was also concerned with appellant's failure to obtain and maintain stable housing. She was living with her mother at the time of the hearing in a two-bedroom apartment that had

been determined to be inappropriate for the children. Finally, the court recognized at the hearing that appellant was still married to Mr. Boyt, who continued to have a relationship with her family. The court was concerned that continued contact with Mr. Boyt would be harmful to the children. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, at 12, ___ S.W.3d ___, ___. We find no clear error in the circuit court's finding that termination of appellant's parental rights was in the children's best interest.

Affirmed.

KINARD and BROWN, JJ., agree.

*Dusti Standridge*, for appellant.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.