N. MARK KLAPPENBACH, Judge
Santos Ivan Mitjans appeals the order of the Johnson County Circuit Court terminating his parental rights to his children, JH and SH. Mitjans contends that there was insufficient evidence to support terminating his parental rights and that his due-process rights were violated. We affirm.
Two-year-old JH and one-year-old SH were removed from the legal custody of their mother, Breonna Hogue, on May 6, 2016. The Arkansas Department of Human Services (DHS) exercised an emergency hold on the children after their infant half-brother IH was discovered to have suffered physical abuse, medical neglect, and inadequate supervision while in the care of Hogue and IH's putative father, Lamar Williams.[1] JH and SH were with Mitjans when DHS attempted to place the hold on them, and after some resistance, Mitjans brought them to the DHS office. Mitjans attended the probable-cause hearing on May 16, 2016, where the court ordered him to submit to random drug screens as requested by DHS, to attend and complete parenting classes, to obtain and maintain stable and appropriate housing, and to obtain and maintain stable and gainful employment.
JH and SH were subsequently adjudicated dependent-neglected on the basis that they were at substantial risk of serious harm due to the abuse of their sibling, IH. Mitjans did not attend the adjudication hearing or any of the seven review and permanency-planning hearings that followed. In November 2017, DHS filed a petition to terminate the parental rights of Mitjans, Hogue, and Williams. Mitjans appeared at the December 2017 termination hearing and requested an attorney. The court granted a continuance as to Mitjans but terminated the rights of Hogue and Williams. Mitjans was appointed an attorney, and the hearing to terminate his rights was held on February 20, 2018.
Mitjans and Mahogany Smith, the caseworker, were the only witnesses at the hearing. Shortly after the probable-cause hearing, Mitjans moved to Miami, Florida, to live with his family because he was on parole and did not have anyone in Arkansas with whom he could live. Smith said that Mitjans was aware of his court-ordered obligations that were announced at the probable-cause hearing and had been *749 given a copy of the order, but he had not complied. Smith described her contact with Mitjans as "hit and miss," noting that he had not had a telephone for a long time. Mitjans had used FaceTime to communicate with the children once or twice a month when they had visits with Hogue. Smith said that this contact was sporadic and that he had not had any in-person contact with the children since May 2016.
Smith said that in June 2017, she started requesting information for an ICPC home study on Mitjans's home in Florida, but Mitjans had not complied. He had finally returned some of the necessary forms four days before the termination hearing, but they were incomplete. Smith testified that Mitjans did not seem concerned with having to "step up" because he believed Hogue would have the children returned to her. Mitjans said that he lived in a three-bedroom, one-bathroom home in Miami with his parents and adult sister, who was a felon and had declined to provide her information for the background checks required for the home study. He believed that there was enough room in the home for the children and said that his son could sleep with him and his daughter could sleep with his mother. He said that when he had enough money saved he planned to move out and marry his girlfriend and could possibly move to Arkansas; however, he had not been able to save any money yet. He did not have a car.
Mitjans had convictions for hot checks and residential burglary and said his parole was ending in two months. He said that he understood the court's orders but suggested that Smith had discouraged him from doing the things required to get placement of the children due to the fact that he is a felon and Smith had been trying to reunite the children with Hogue Mitjans said that he had been employed at his current job for almost six months and had held a job prior to that for six to eight months before leaving to earn more money. He denied that Smith had requested paystubs. DHS had been unable to give Mitjans random drugs screens, but he testified that he tested negative when screened every other month for his parole. Mitjans had contacted the DHS office in Miami a few weeks before the termination hearing regarding parenting classes; Smith said that she had told him to do so in 2016. Smith said that the children were very likely to be adopted and were currently placed in a foster home willing to adopt them along with their half sibling, IH. The circuit court ruled from the bench that it was terminating Mitjans's rights based on the "subsequent factors" ground.
We review termination-of-parental-rights cases de novo. Sarut v. Ark. Dep't of Human Servs. , 2015 Ark. App. 76, 455 S.W.3d 341. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2017). In making a "best interest" determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. Sarut, supra. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. Id. Credibility determinations are left to the fact-finder. Id.
Mitjans argues that the circuit court erred in terminating his parental rights based on the subsequent-factors ground because this ground was not alleged against him in DHS's petition. He contends that termination on this ground violates his due-process rights. Mitjans argues that only two grounds for termination *750 were alleged against him in the petition-willful failure to maintain meaningful contact, section 9-27-341(b)(3)(B)(ii), and abandonment, section 9-27-341(b)(3)(B)(iv) -and the circuit court had granted his motions to dismiss on these grounds. Mitjans relies on Jackson v. Arkansas Department of Human Services , 2013 Ark. App. 411, 429 S.W.3d 276, in arguing that his termination based on a ground not pled must be reversed.
In Jackson , the ground regarding failure to maintain meaningful contact was not alleged in the petition and was not argued by DHS at the hearing. Furthermore, the circuit court took the matter under advisement and did not make a ruling from the bench. The first time this ground was ever specifically mentioned as a ground for termination was in the circuit court's order terminating Jackson's parental rights. We held that
[b]ecause Jackson was never specifically informed that this ground was being asserted against him, Jackson was denied the opportunity to fully develop a defense to this ground or to adequately address this ground during closing arguments. Thus, the trial court's reliance on this ground to support termination was clearly erroneous. Due process dictates that Jackson be afforded an opportunity to properly defend the allegations against him prior to terminating his parental rights.
Jackson , 2013 Ark. App. 411, at 7, 429 S.W.3d 276, 280. Mitjans argues that although the subsequent-factors ground was included in the petition, it was alleged against only Hogue and there were no facts pled by DHS to apprise him that this was a ground on which his rights could be terminated. He argues that here, as in Jackson , DHS did not request that the pleadings conform to the proof.
DHS argues that the subsequent-factors ground was pled against Mitjans and that he failed to preserve a due-process argument. We agree. The petition in this case sought to terminate the rights of Mitjans, Hogue, and Williams. Four grounds for termination are cited. The first ground, failure to remedy the conditions that caused removal, is alleged only against Hogue. The second ground, willful failure to maintain meaningful contact, is alleged against "the fathers." The subsequent-factors ground is quoted in the next paragraph, followed by eight sentences addressing Hogue. This paragraph appears to continue onto the next page, however, with one sentence addressing both fathers: "That neither father has maintained meaningful contact with their respective children." The abandonment ground is alleged against "the fathers" in the next paragraph.
After DHS rested, Mitjans moved for a "directed verdict," arguing that DHS had failed to prove either best interest or the only two grounds alleged in the petition-willful failure to maintain meaningful contact and abandonment. A discussion then ensued between the court, Mitjans's attorney, and the DHS attorney, Mr. Lester, regarding which grounds DHS had alleged against Mitjans. Part of the discussion was as follows:
MR. LESTER : And, Judge, and also subsequent factors. Now, I didn't specifically list the grounds as to Mr. Mitjans; however, it was to the parent and not the - - not just the mother exclusively, so - -
THE COURT : ... It's true you do say "parent and the subsequent issues" but the meat of the allegations are all mom. "Mom didn't do this. Mom didn't do that."
MR. LESTER : That is correct, Your Honor. But, I mean, the fact is, Mr. *751 Mitjans has been MIA throughout the case - -
THE COURT : Right.
MR. LESTER : - - and has not done anything. I mean, there's not really - - he doesn't have any - - there's nothing for me to point to say, "He"-
THE COURT : You're proving nothing exists, right?
After further discussion regarding other grounds, the court ruled that it was granting Mitjan's motion Mitjans's motion to dismiss on the abandonment ground and denying the motion as to failure to maintain meaningful contact. Although Mitjans had made no motion or argument regarding the subsequent-factors ground, the court stated that it was denying his motion on that ground and that
even though most of the details they allege were mom's situations, I think they had enough here to put dad on notice and I think they followed through with the - - you know, enough subsequent issues for us to continue here. So I'm going to deny the motion on that.
Mitjans's attorney made no comment regarding this ground. At the conclusion of the hearing, the court ruled from the bench that DHS had proved the subsequent-factors ground, noting Mitjans's failure to complete parenting classes, failure to submit to random drug screens, failure to have a suitable home, and failure to cooperate with DHS. The court dismissed the ground of failure to maintain meaningful contact.
Unlike in Jackson , here, the subsequent-factors ground was argued by DHS at the termination hearing, and the court found that it had been sufficiently pled. The circuit court did not take the matter under advisement but instead ruled from the bench that it was terminating based on this ground. Mitjans did not object or make any argument regarding DHS and the court's reliance on this ground either during the discussion regarding which grounds were pled or upon the court's ruling. We have held that permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue. Anthony v. Ark. Dep't of Human Servs. , 2013 Ark. App. 556 (holding that mother failed to preserve argument that the facts supporting termination occurred after the petition to terminate had been filed). As in Edwards v. Arkansas Department of Human Services , 2016 Ark. App. 37, 480 S.W.3d 215, Mitjans never raised an argument below about lack of notice or failure to properly plead grounds. Even in termination cases, we will not address arguments raised for the first time on appeal. Sills v. Ark. Dep't of Human Servs. , 2018 Ark. App. 9, 538 S.W.3d 249. Any argument regarding a lack of factual specificity in the petition to terminate parental rights is also precluded by the failure to object below. Chaffin v. Ark. Dep't of Human Servs. , 2015 Ark. App. 522, 471 S.W.3d 251.
Mitjans does not challenge the sufficiency of the evidence supporting the subsequent-factors ground. His only remaining argument is that insufficient evidence supported the circuit court's best-interest finding. However, his argument on this point is limited to his claim that the best-interest finding was clearly erroneous because the circuit court found that his contact with the children had constituted meaningful contact. His argument appears to be based on the fact that a lack of meaningful contact was the only fact pled regarding best interest in the termination petition. However, Mitjans cites no authority for the proposition that the circuit court was not entitled to consider all the evidence to support a best-interest determination. Here, the circuit court considered *752 the evidence that the children were very likely to be adopted and the potential harm if placed in Mitjans's custody due to his failure to obtain a suitable home and to comply with court orders after the case had been ongoing for twenty-one months. We hold that the circuit court's finding that termination was in the children's best interest is not clearly erroneous.
Affirmed.
Virden and Harrison, JJ., agree.

Neither Hogue nor Williams are the subject of this appeal.