Cite as 2020 Ark. App. 279

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-19-890

| | |
|---|---|
| SECIA SALINAS | **Opinion Delivered:** April 29, 2020 |
| APPELLANT | |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-18-872] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Secia Salinas appeals after the Washington County Circuit Court filed an order terminating her parental rights to her twin daughters, C.N. and S.N.2 (DOB 10-12-2018) in case 72JV-18-872.[1] Appellant argues on appeal that (1) the Arkansas Department of Human Services (DHS) failed to plead any grounds for termination against her in its petition and (2) DHS failed to present sufficient evidence to support the grounds for termination. We affirm.[2]

---

[1]The circuit court additionally terminated the parental rights of Samuel Nino, the children's father, after he filed a written consent to the termination; however, he is not a party to this appeal.

[2]This is a companion case to the appeal in *Salinas v. Arkansas Department of Human Services*, 2020 Ark. App. 272, 599 S.W.3d 728, which we also hand down today. Case 72JV-18-438 involved the termination of appellant's parental rights to four of her other older children (A.F., M.S.1, M.S.2, and S.N.1). S.N.1 is a sibling of C.N. and S.N.2, and A.F., M.S.1 and M.S.2 are half siblings of C.N. and S.N.2. C.N. and S.N.2 were not living with appellant when the other four children were removed, and the circuit court conducted

## I. *Relevant Facts*

On October 23, 2018, DHS filed a petition for ex parte emergency custody and dependency-neglect of C.N. and S.N.2. In the affidavit attached to the petition, DHS stated that a seventy-two-hour hold was exercised over the children after their birth and before they were discharged from Washington Regional Medical Center. The affidavit outlines the long history that DHS had with this family. The children's father, Samuel Nino, and appellant have had a tumultuous relationship in which there were times of domestic abuse related to Nino's excessive alcohol consumption. DHS noted that appellant had failed on other occasions to properly supervise her older children and seemed to be unaware of the necessity or importance of proper supervision. A few days before C.N. and S.N.2's birth, a caseworker visited the parental home as part of the continued monitoring in the companion case and observed that the home was even more disorganized and dirty since the caseworker's previous visit on Labor Day. There was not a clean place to sit on the kitchen table; there was cat feces on the kitchen counter; there was cat feces and cat litter spread on the walkway to the living room; there was dirty laundry piled in the bathroom and laundry room; there was caked-on dirt in the bathroom on the counters and toilet; and the trash was overflowing with beer cans. Appellant reported that Nino had increased his drinking since Labor Day despite being court ordered not to drink. Thus, C.N. and S.N.2 were subsequently removed from the physical and legal custody of their mother prior to

C.N. and S.N.2's dependency-neglect case in a separate docket, case no. 72JV–18–872. However, the circuit court heard evidence in support of both termination petitions in the two dockets on August 1, 2019.

their discharge from the hospital "because the circumstances or conditions of CAREGIVER present an immediate danger to the health or physical well-being of the juveniles."

The circuit court granted the petition, finding that probable cause existed for the removal, and a probable-cause order was filed on October 24, 2018. Appellant was ordered to cooperate with DHS; attend a case-plan staffing; refrain from using illegal drugs or alcohol; submit to random drug screens as requested by DHS; obtain and maintain stable housing and employment; maintain a clean, safe home for herself and the children; demonstrate an ability to protect the children and keep them safe from harm; and follow the case plan and court orders. An adjudication order was filed on December 12, 2018, finding C.N. and S.N.2 to be dependent-neglected as a result of parental unfitness. It further determined that the allegations in the petition and affidavit were true and correct:

> Specifically, we cannot say that the children were exposed to domestic violence, however, the law does not require that the children be injured. The Department has proven that the children are at a substantial risk of harm. The court finds that the children are at *substantial* risk of harm due to Mother and Father's domestic violence past, the choices that the parents have made in the companion foster care case, and there are TRUE findings for: sexual abuse (April 2017); threat of harm (January 2017); inadequate supervision; failure to protect (December 2017); striking a child and cuts welts and bruises (May 2018). To return the children to mother or father would place them at a substantial risk of harm.

(Emphasis in original.) The goal of the case was set to reunification with the parents.

A permanency-planning hearing was held on April 24, 2019. It was at this hearing that the circuit court changed the goal to adoption. In the permanency-planning order, the circuit court noted that Nino had executed his consent to the termination of his parental rights and that he waived his right to counsel at the termination hearing. Regarding

appellant's compliance with court orders and the case plan, the circuit court made the following findings:

> Mother has done the following: obtain stable housing; parenting classes; individual counseling; supervised visitation; maintained stable employment. Mother has NOT done the following: and has not demonstrated the ability to protect the children and keep them safe from harm and abuse (*The most important area*)! The testimony is irrefutable that mother is addressing co-dependency issues and still reaches out to Samuel Nino for assistance. The Court finds that the root cause has not been addressed by Mother.

(Emphasis in original.) Thereafter, DHS filed a petition for the termination of parental rights on June 25, 2019, specifically alleging that appellant and Nino's parental rights should be terminated based on the statutory grounds of consent, aggravated circumstances, and subsequent factors. *See* Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2019).

At the termination hearing, the circuit court first heard evidence regarding the four other children in the companion case—72JV-18-438. The parties then agreed that all evidence and testimony from that hearing was incorporated into the termination hearing and record regarding C.N. and S.N.2 in case 72JV-18-872.[3] The circuit court additionally heard supplemental testimony from Percilla Cothren, the family-service worker assigned to the case. Ms. Cothren opined that C.N. and S.N.2 were adoptable because neither child had any special medical needs or behavioral issues that might inhibit adoption. After hearing further oral argument by the parties, the circuit court orally ruled from the bench that it was granting DHS's petition for termination of parental rights.

---

[3]We do not repeat that evidence and testimony in this opinion; however, a summary of that evidence and testimony is contained in *Salinas*, 2020 Ark. App. 272, 599 S.W.3d 728.

4

The circuit court filed a written order terminating appellant's parental rights on August 30, 2019. The circuit court specifically found by clear and convincing evidence that it is in the best interests of the children to terminate appellant's parental rights. It quoted from the grounds alleged in the termination petition and stated that it was granting DHS's petition as pled. It further stated that it considered Ms. Cothren's testimony that the children were adoptable and the potential harm to the health and safety of the children if returned to appellant's custody. Regarding the potential harm, the circuit court made the following findings:

> The parents have demonstrated an unwillingness to make meaningful and measurable progress towards reunification and have not demonstrated an ability to protect the children from harm, particularly the type of harm that initially brought the children into care. The Court has no doubt that, if returned, the children would be in immediate danger. The mother has a home now, and the Court notes that it is clean, however, it is not safe because the mother lives there! The mother has repeatedly demonstrated that she cannot adequately supervise her children and ensure that they are not sexually abused. The mother has further demonstrated that she is incapable of tending to the severe mental health needs of her children, as indicated by the mother bringing up inappropriate conversations involving sexual abuse during supervised visits with [M.S.1] and [M.S.2]. The testimony today is that [M.S.1], a sibling of the herein juveniles, suffers from disruptive mood disorders, pica, among other disorders, and is worried that siblings will be sexually abused. The mother stated today that she does not want her children to be bounced around in foster care, however, the Court notes that the mother had to be specifically ordered in her prior FINS case to not have other people around her children, yet she blatantly disregarded those orders. Given the facts and the history of the situation, the Court finds by clear and convincing evidence that the potential harm in returning the children to their mother is far too great. With respect to Samuel Nino, the Court cannot place the children with him, as he has executed a consent to terminate parental rights and is totally unfit.

This appeal followed.

## II. *Standard of Review*

A circuit court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

6

The intent behind the termination-of-parental rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

### III. *Grounds Alleged in the Petition*

Appellant first argues that the circuit court erred in terminating her parental rights because DHS failed to plead any grounds in the petition for termination against her. Citing *Jackson v. Arkansas Department of Human Services*, 2013 Ark. App. 411, 429 S.W.3d 276, she argues that her termination was based on a ground not pled in the petition and must be reversed. In *Jackson*, the ground regarding failure to maintain meaningful contact was not alleged in the petition and was not argued by DHS at the hearing. Furthermore, the circuit court took the matter under advisement and did not make a ruling from the bench. The first time this ground was ever specifically mentioned as a ground for termination was in the circuit court's order terminating Jackson's parental rights. We held that

> [b]ecause Jackson was never specifically informed that this ground was being asserted against him, Jackson was denied the opportunity to fully develop a defense to this ground or to adequately address this ground during closing arguments. Thus, the trial court's reliance on this ground to support termination was clearly erroneous.

7

> Due process dictates that Jackson be afforded an opportunity to properly defend the allegations against him prior to terminating his parental rights.

*Jackson*, 2013 Ark. App. 411, at 7, 429 S.W.3d at 280. Here, appellant argues that the grounds included in the petition were alleged against only Samuel Nino and that there were no facts pled by DHS to apprise her that any grounds existed on which her rights could be terminated. DHS argues that the subsequent-factors and aggravated-circumstances grounds were pled against appellant and that she nevertheless failed to preserve her argument. We agree.

The petition in this case sought to terminate the rights of both appellant and Nino, and specifically stated the following:

> 4. The Department is seeking the termination of Secia Salinas's and Samuel Nino's parental rights as to the following juveniles: [C.N.], date of birth: October 12, 2018; [S.N.2], date of birth: October 12, 2018.
>
> . . . .
>
> 7. The grounds for the termination of parental rights and the Department's authority to consent to adoption and permanent alternate placement of the juvenile without parental consent or notice, include:
>
> > (1) That it is in the best interest of the juveniles, including consideration of the following factors:
> >
> > > A. The likelihood that the juveniles will be adopted if the termination petition is granted, and
> > >
> > > B. The potential harm, specifically addressing the effect on the health and safety of the children, caused by returning the children to the custody of the parents.
> > >
> > > C. And one or more of the following grounds:
>
> As to Samuel Nino:

8

**1) A parent has executed consent to termination of parental rights or adoption of the juveniles, subject to the court's approval. A.C.A. § 9‑27‑341(b)(3)(B)(v)(a).**

Specifically, on December 12, 2018, Samuel Nino executed and caused to be filed a "Consent to Termination of Parental Rights Waiver of Notice and Entry of Appearance." Samuel Nino did not revoke his consent, and the time to revoke that consent has since lapsed.

**2) The parent is found by a Court of competent jurisdiction, including the Juvenile Division of the Court to:**

> **Have subjected any juvenile to aggravated circumstances. "Aggravated circumstances" means:**
>
> > **A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification. A.C.A. § 9‑27‑341(b)(3)(B)(ix)(a).**

. . . .

It is axiomatic that the most important question is whether completion of the case plan achieved the intended result of making the parent capable of caring for the child. While the *mother* has participated in family services throughout this case, however, she has consistently shown throughout this case, and in past protective services cases, that she is incapable of keeping her children safe and ensuring that their mental health needs are addressed. Further, given the *mother's* history with the Department, demonstrates that there is little likelihood that family services will result in successful reunification. The *mother* continues to be in a tumultuous relationship with Samuel Nino after he failed to comply with the case plan and court orders, and voluntarily relinquished his parental rights as to his children. This further underscores the fact that there is little likelihood that continued services to the family would result in reunification.

**3) That other factors or issues arose subsequent to the filing of the original petition for dependency‑neglect that demonstrate that placement of the juveniles in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors**

9

**or rehabilitate the parent's circumstances that prevent placement of the juvenile in the custody of the parents.**

The original petition for Emergency Custody and Dependency-Neglect was filed in this case on October 23, 2018. Since that filing, the Court has found that the parents have failed to comply with the case plan and court orders that were intended to assist with the reunification of the family.

Specifically, the *mother* has not complied with all of the court orders and the case plan. Specifically, the *mother* has failed to demonstrate that she can keep her children safe, as she continues to make poor choices that are detrimental to her children's well-being, namely continuing to have contact with Samuel Nino.

At the permanency planning hearing the Court found that the children cannot be safely returned to *Mother* because she has failed to make genuine, sustainable, and measurable progress towards alleviating or mitigating the causes of the juveniles' removal from the home. The Court specifically noted that the children have gone through extensive trauma, and that *mother* is unable to demonstrate that she can properly care for them. The Court also noted that the *mother* continues to have a relationship with Samuel Nino, and that she still reaches out to him for assistance, as the *mother* testified that she had recent contact with him.

It is worth noting that Samuel Nino has been in noncompliance with the case plan and court orders throughout this case, and, as a result, executed a consent to terminate his parental rights as to [S.N.1] and her siblings in a separate case. The *mother* has chosen to continue her relationship with a man that has serious unaddressed alcohol dependency demonstrating that she continues to make poor choices for her children, and that she lacks the capacity to keep them safe.

Even full compliance of a case plan is not determinative, as what matters most is whether completion of the case pan achieved the intended result of making the parent capable of caring for the child. *See Cole v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 203 (2012). While the *mother* has "checked-off the boxes," she continues to make choices that inhibit her ability to safely parent her children.

. . . .

Despite a meaningful effort by the Department to rehabilitate the parents and correct the conditions which caused removal . . . the parents have

> failed to remedy the conditions that caused their children to come into foster care.

> The Court found that the Department has been in compliance and has made reasonable efforts towards the goal of reunification.

(Emphasis added and some from original.) We acknowledge appellant's argument that in paragraph 7 of the petition for termination, DHS included a subheading "As to Samuel Nino" and did not include another subheading for the appellant. However, in reviewing the allegations in paragraph 7, the petition includes eleven separate allegations against the appellant. Even though the petition failed to specifically include a subheading stating appellant's name above the second and third grounds alleged, it is clear from the context that DHS was alleging that the subsequent-factors and aggravated-circumstances grounds applied to appellant. Thus, despite her assertions to the contrary, appellant was sufficiently placed on notice that she must defend on those particular grounds.

Moreover, unlike in *Jackson*, here, DHS specifically argued at the termination hearing that the grounds it pled in the petition were sufficiently proven. Additionally, at the conclusion of the hearing, the circuit court did not take the matter under advisement but instead ruled from the bench that it was terminating appellant's parental rights on the aggravated-circumstances and subsequent-factors grounds. Appellant did not object or make any argument regarding DHS and the circuit court's reliance on these grounds either during the discussion regarding which grounds were pled or upon the circuit court's ruling. We have held that permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue. *Mitjans v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 472, 561 S.W.3d 747. As in *Mitjans*, appellant never raised an

11

argument below about lack of notice or failure to properly plead grounds. Even in termination cases, we will not address arguments raised for the first time on appeal. *Id.* Any argument regarding a lack of factual specificity in the petition to terminate parental rights is also precluded by the failure to object below. *Id.*

## IV. *Termination*

Next, we do not agree with appellant's contention that the evidence was insufficient to support the finding that statutory grounds existed in order to terminate her parental rights. Although the circuit court found two statutory grounds for termination, only one ground is necessary to support the termination. *See Reid, supra.* The circuit court found by clear and convincing evidence that DHS proved the aggravated-circumstances ground. Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)* lists as a ground for removal when

> (ix)*(a)* The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
>
> . . . .
>
> *(3)(A)* Have subjected any juvenile to aggravated circumstances.
>
> *(B)* "Aggravated circumstances" means:
>
> *(i)* A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification;

Appellant specifically argues on appeal that the circuit court's findings regarding aggravated circumstances was based purely on speculation and must be reversed. We disagree.

At the termination hearing, Ms. Cothren testified that appellant had never been able to achieve consistent visits with the three older children. While appellant did not maintain

12

weekly contact with DHS and did not have stable employment, she did participate in counseling, submit to drug screens, complete parenting classes, and obtain stable housing. However, Ms. Cothren did not believe appellant had demonstrated an ability to keep her children safe from harm and cited appellant's continued association with Nino even after he relinquished his parental rights. Ms. Cothren also noted that DHS had been providing services to appellant since 2016 "all with no result." Despite receiving services from DHS since 2016, appellant never reached a point where she could be trusted with unsupervised visitation or a trial placement.

Appellant testified that she had just started a food-service job at a hospital the day before the termination hearing. She admitted she had not been consistent in maintaining contact with DHS because she "felt it was pointless." She stated, "[I]f it were up to me, I would take my three oldest [A.F., M.S.1, and M.S.2] home, and let the [name retracted] family adopt the three youngest [S.N.1, C.N., and S.N.2]." Despite Nino's signing a consent to the termination of his parental rights and his previous history of domestic abuse, appellant admitted being in contact with Nino at least twice in the four months prior to the termination hearing. She claimed that a previous domestic-violence incident was "isolated," that she had felt safe in calling Nino for a ride, and that he had called her for a ride "within the last month." Although she claimed she would not let Nino around the children, the court questioned this statement, asking "If you've had contact with him after he signed the consent, how could the Court be trusting of your word today?" Based on the evidence presented, we hold that the circuit court's finding that there was little likelihood that services would result in successful reunification was not clearly erroneous. Because we conclude

13

that DHS adequately proved the aggravated-circumstances ground, we need not discuss the remaining ground found by the circuit court. *See Kohlman v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595. Accordingly, we affirm the order terminating appellant's parental rights.

Affirmed.

GRUBER, C.J., and SWITZER, J., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.