Cite as 2020 Ark. App. 428

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-20-183

| | |
|---|---|
| JOEL GUERRERO<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** September 23, 2020<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-18-966]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Joel Guerrero appeals the Washington County Circuit Court order terminating his parental rights to his son JG. Guerrero challenges the circuit court's finding that termination was in JG's best interest. We affirm.

JG was born in March 2017 to Guerrero and Dalesha Welch. He was removed from his parents' custody in Adair County, Oklahoma, in March 2018 based on allegations that Welch was using methamphetamine and that domestic violence between Welch and Guerrero had injured JG on at least one occasion.[1] In July 2018, the Oklahoma court adjudicated JG a "deprived" child due to domestic violence, failure to protect, and lack of proper parental care and guardianship. In November 2018, the case was transferred to

---

[1]Guerrero testified at a later hearing that Welch and JG lived in his home for about ten months before Welch and JG moved to Oklahoma. He stated that he visited JG in Oklahoma, but he was living in Springdale, Arkansas, when JG came into care in Oklahoma.

Washington County, Arkansas, where Guerrero and Welch had an ongoing dependency-neglect case involving JG's sister, MW. MW was born in April 2018 and was taken into custody by the Arkansas Department of Human Services (DHS) after testing positive for methamphetamine at birth.

The Washington County Circuit Court held a review hearing in JG's case in November 2018. The court found that JG could not be returned to the parents' custody because they were not in compliance with the case plan in MW's case. Welch had been arrested multiple times, had used methamphetamine in the past month, was unemployed, and had recently moved back to Oklahoma with her mother. Neither parent had consistently attended drug screens, and both had missed multiple visits with MW. Guerrero had tested positive for THC, had not completed a drug-and-alcohol assessment, had not completed parenting classes, and had not maintained weekly contact with DHS. Following another review hearing in April 2019, the court again determined that neither parent was in compliance with the case plan and court orders. Guerrero had maintained stable housing and employment, but he had only recently begun submitting to random drug screens and participating in counseling.

A permanency-planning hearing was held in August 2019.[2] Welch had been in inpatient treatment in Oklahoma since April 30 and had given birth to JG2 in July. JG2, who is also Guerrero's child, was in foster care in Oklahoma. Guerrero was living with his three older children in Arkansas. Guerrero testified that his relationship with Welch had

_____

[2]Immediately prior to the hearing, a termination-of-parental-rights hearing was held in MW's case, and the court incorporated the testimony from that hearing. The circuit court terminated both parents' parental rights to MW.

been "off and on" over the past four years but that it had been off since February 2019. The caseworker testified, however, that Guerrero had not demonstrated that he could abstain from his unstable relationship with Welch. The court noted that even after MW had tested positive for methamphetamine at birth, Guerrero conceived another child with Welch in the fall of 2018. The court changed the goal of the case to adoption.

The termination-of-parental-rights hearing was held on December 20, 2019. Welch executed a consent to the termination of her rights and did not appear at the termination hearing.[3] Lashell Anthony testified that she is JG2's caseworker in Oklahoma. Anthony said that JG2 had been removed from the custody of both parents because the couple's other children were in custody in Arkansas and Welch later admitted that she had used methamphetamine in October 2018. Anthony testified that the parents had not been participating in services in the case and had not visited with JG2 since October 2, 2019. Guerrero had visited with JG2 only on the three court dates that had been held thus far.

Anthony testified that Welch and Guerrero had arrived together at every court date and visitation and had presented themselves as a couple in a relationship. On one occasion, Anthony saw them "all laid together" in Guerrero's truck. After Welch was discharged from inpatient treatment in September, they indicated to Anthony that they had stayed in a motel together, and Welch told her that Guerrero was helping her move to a sober-living home. Welch was incarcerated beginning October 4. October 7 was the first time Guerrero told Anthony that he no longer thought it was a good idea to have his visits with Welch. Anthony agreed and said that she had been telling him that "from day one." Welch told

---

[3]The circuit court's order also involuntarily terminated Welch's parental rights.

Anthony that the Arkansas court did not want the parents together as a family, but they did plan on being together as a family for JG2's case in Oklahoma. This was one reason why Welch did not want JG2's case transferred to Arkansas. Anthony said they both told her that they planned to live together as a family once Welch's treatment plan was completed. She said that Guerrero was helping Welch pay for groceries and other things she needed.

K.C. Oliver, the caseworker in JG's case, testified that Guerrero had maintained stable housing and employment and had participated in counseling. He had failed to arrange for anger-management counseling and had missed several drug screens. Of the drug-and-alcohol screens he had taken, Guerrero had passed all of them except for one positive test for K2. Guerrero had consistently visited with JG, and the visits had gone well, but on one occasion in October, Guerrero got angry and screamed at Oliver. She said that he later apologized.

Oliver was concerned about Guerrero and Welch having a relationship because Welch had not demonstrated sobriety and had been unstable throughout the case. Oliver said that around September, Welch told her that she wanted to consent to the termination of her rights so that JG could be with Guerrero, and Welch knew that Guerrero would let her see JG. Although Guerrero told Oliver that he did not plan on being with Welch, Oliver did not believe Guerrero would stay away from Welch in light of Anthony's testimony. As a result, she did not think Guerrero had demonstrated an ability to protect JG and keep him safe from harm.

Guerrero testified that he had not spoken to Welch since the last court date in Oklahoma on October 2. He said that if Welch was doing the right things, he did not have

4

a problem with her seeing the children, but because she keeps "falling back," he did not want anything to do with her. He denied presenting as a couple to Anthony in Oklahoma and denied telling her that they planned to be together as a family. He said that they had talked outside of court, and he had given her a ride to visitation, but he denied ever being at a motel with Welch or helping her move. He said that he had changed his phone number so she could not contact him, had informed his employer not to take her calls or allow her on the premises, and had stopped communicating with Welch's mother. Guerrero insisted that he would keep JG away from Welch if ordered to do so. Guerrero said that there was no domestic violence in his home and that he had no problem with alcohol, drugs, or anger management.

Oliver testified that since the case was transferred to Arkansas, JG had been in a foster home with MW where he was doing well. JG was delayed in his development but was making progress in occupational and speech therapy and is adoptable. The foster family was interested in adopting him.

The circuit court terminated Guerrero's parental rights on three statutory grounds and its finding that termination was in JG's best interest. The court specifically found that Guerrero's testimony regarding his relationship with Welch was not credible. The court did find Anthony's testimony credible. With regard to potential harm, the court found that Guerrero would most likely expose JG to Welch, whom the court found to be "totally unfit."

We review termination-of-parental-rights cases de novo. *Sarut v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 76, 455 S.W.3d 341. At least one statutory ground must

5

exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2019). The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Sarut*, *supra*. Credibility determinations are left to the fact-finder, here the circuit court. *Id*.

Guerrero challenges only the circuit court's determination that termination was in JG's best interest. In making a "best interest" determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody is returned to a parent. *Id*. In considering potential harm caused by returning the child to the parent, the circuit court is not required to find that actual harm would result or affirmatively identify a potential harm. *Gonzalez v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability the child receives in a permanent home. *Id*. We have noted that a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Id*.

Guerrero argues that the evidence does not demonstrate clearly and convincingly that he would allow Welch to be around JG if custody was returned to him. He claims it is speculative to assume that he was in a relationship with Welch merely because they had contact at JG2's hearings and visitations. He argues that his denials of a relationship are more credible than anything Welch told Anthony about her intentions.

6

Citing *Duncan v. Arkansas Department of Human Services*, 2014 Ark. App. 489, Guerrero argues that speculation about a parent continuing a romantic relationship is not a sufficient ground for terminating parental rights. In *Duncan*, however, both parents testified that they had separated. The caseworker questioned whether they had really separated because Duncan "seemed to always know where to find [the father] despite him not having a phone." *Duncan*, 2014 Ark. App. 489, at 4. The caseworker also believed that the father had helped Duncan pay bills, but the parents denied this, and the caseworker had no proof.

Here, only Guerrero testified that he had no intention of continuing a relationship or contact with Welch. The Oklahoma caseworker, Anthony, testified that in September and October, Guerrero and Welch presented themselves as a couple, and they both told her that they planned to live together as a family in the future. The court specifically found Anthony's testimony credible. Welch also told the Arkansas caseworker that she knew Guerrero would let her see JG if she consented to the termination of her parental rights and he was awarded custody. This evidence goes beyond the caseworker's speculation in *Duncan*.

Furthermore, past actions of a parent over a meaningful period of time are good indicators of what the future may hold. *Easter v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 441, 587 S.W.3d 604. After JG was taken into custody and after MW tested positive for methamphetamine at birth and was taken into custody, Guerrero conceived another child, JG2, with Welch. In the next several months, there was little opportunity for the two to be together due to Welch's being incarcerated from February through March, in treatment from April to the middle of September, and incarcerated again beginning October

4. Although Guerrero testified in August that their relationship had been over since February, they presented themselves as a couple at court dates and visitations in JG2's case and informed their caseworker that they planned to be together in the future.

Guerrero now states again that he will have no more contact with Welch. The circuit court, however, found that this testimony was not credible. We defer to the circuit court's superior opportunity to observe the parties and judge the credibility of witnesses. *Phillips v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 169, 596 S.W.3d 91. Accordingly, we conclude that the circuit court did not clearly err in finding that Guerrero was likely to expose JG to Welch, and due to Welch's failure to demonstrate sobriety, stability, or compliance with the case plan, JG would be at risk of harm. *See Terrones v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 115, 515 S.W.3d 144 (affirming termination where evidence showed that father maintained a relationship with the mother throughout the majority of the proceedings, that they had a third child born during the pendency of the proceedings who had been exposed to methamphetamine, that they had separated only twenty-two days before the hearing, that they had a history of returning to their relationship, and that the mother posed a serious risk to their children as result of her drug use). We hold that the circuit court's finding that termination was in JG's best interest was not clearly erroneous.

Affirmed.

HARRISON and HIXSON, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Callie Corbyn*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.

8